UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

SOCIETE ANONYME DAUPHITEX,

                    Plaintiff,         07 Civ. 489

   -against-                   O P I N I O N

SCHOENFELDER CORPORATION,
SCH DPX CORPORATION, and
SCH ENTERPRISES, LLC,

                    Defendants.

------------------------------------X



A P P E A R A N C E S:

    Attorneys for Plaintiff

    WINSTON & STRAWN LLP
    200 Park Avenue
    New York, New York 10166
    By:  Michael S. Elkin, Esq.
         John J. Burke, Jr., Esq.
         George T. Soterakis, Esq.

    Attorneys for Defendants

    WUERSCH & GERING LLP
    100 Wall Street, 21st Floor
    New York, New York 10005
    By:  Gregory F. Hauser, Esq.

**Sweet, D.J.**

Defendants Schoenfelder Corporation ("Schoenfelder"), SCH DPX Corporation ("SCH"), and SCH Enterprises, LLC ("Enterprises") have moved under Rule 12(b)6, Fed. R. Civ. P., to dismiss the second cause of action of the Amended Complaint of plaintiff Societe Anonyme Dauphitex ("Dauphitex"). For the reasons set forth below, the motion is denied.

At issue is the adequacy of the Amended Complaint in pleading the successor liability of defendant Enterprises for the obligation of defendant Schoenfelder and defendant SCH.[1] The Amended Complaint satisfies the requirements of law to survive a motion to dismiss and supports the inference that Enterprises was created to avoid the very liability of Schoenfelder that Dauphitex now seeks to enforce.

## I. Prior Proceedings

Dauphitex commenced this action against Schoenfelder and SCH on January 22, 2007, to enforce a foreign judgment entered against Schoenfelder by the Tribunal de Commerce de Paris

---

[1] According to the Amended Complaint, on December 5, 2003, Schoenfelder changed its name to SCH (Am. Compl. ¶4).

2

("Commercial Court of Paris"). On November 3, 2003, Schoenfelder commenced a breach of contract action in the Commercial Court of Paris against Dauphitex, to which Dauphitex responded by filing a counterclaim for breach of contract against Schoenfelder. The Commercial Court of Paris rendered judgment in favor of Dauphitex on June 10, 2005, and directed SCH to pay Dauphitex the equivalent of U.S. $557,268.42, plus interest of one percent per month, as well as €5,000 for extra-judicial fees and all court costs (the "French Judgment"). The French Judgment is attached as an exhibit to the Amended Complaint.

After Dauphitex moved for a pre-judgment order of attachment on January 22, 2007, the Court scheduled a hearing on Plaintiff's application for January 31. In response, SCH cross-moved on February 9 for a stay of this action. At the adjourned hearing on February 21, Plaintiff's application for a pre-judgment order of attachment was denied, and SCH's cross-motion was granted, with the condition that SCH post a bond for the full amount of the French Judgment plus interest, by order of February 26, 2007 (the "February 26 Order").

On February 28, SCH sent an e-mail to Plaintiff's counsel stating that SCH would not post the bond required by the February 26 Order. Dauphitex moved for an order finding SCH in contempt of

3

the February 26 Order and further requested that the February 26 Order be vacated to permit enforcement of the French Judgment. On March 20, 2007, the Honorable Miriam Goldman Cedarbaum, sitting in Part I, vacated the February 26 Order and directed SCH and its counsel to provide information and documents regarding SCH's financial condition, as well as a representation regarding SCH's efforts to acquire a bond. On March 22, 2007, Joe Schoenfelder, President of SCH and Enterprises, stated that SCH had no income during the 2006 calendar year and that SCH's liabilities greatly exceed its assets.

On March 22, 2007, Dauphitex filed its Amended Complaint, naming Enterprises as an additional defendant in this action and adding a second cause of action for successor liability. It is alleged that Enterprises was created pursuant to the Limited Liability Company law of the State of New York on November 18, 2003, two weeks after Schoenfelder commenced an action against the Plaintiff in the Commercial Court of Paris (Am. Compl. ¶21). It is further alleged that SCH and Enterprises both engaged in the same children's clothing business, shared the same address, operated out of the same office space, shared the same telephone number, possessed the same employees and management, and were both owned by Joe Schoenfelder (Am. Compl. ¶¶23, 25-30). The Amended Complaint also alleges that SCH transferred all of its assets to Enterprises,

4

that Enterprises owns all of the assets and goodwill of SCH, that Enterprises is a mere continuation of SCH, and that Enterprises has successor liability and is responsible for the liabilities of SCH, including the debt owed to Dauphitex. (Am. Compl. ¶¶22, 24, 31-32).

The motion for contempt was denied on June 26, 2007. The instant motion to dismiss was heard and marked fully submitted on June 6, 2007.

## II. The Rule 12(b)(6) Standard

A motion to dismiss pursuant to Rule 12(b)(6) must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). For the purposes of a motion to dismiss, all factual allegations are accepted as true, and all inferences are drawn in favor of the pleader. Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993).

At issue in a Rule 12(b)(6) motion "is not whether a [claimant] will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Villager Pond,

5

Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995) (quoting Scheuer, 416 U.S. at 235-36). In other words, the function of a motion to dismiss "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 176 (2d Cir. 2004) (quoting Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980)). Therefore, "[i]f under any reasonable reading, the complaint states a claim upon which relief can be granted," the Court must deny the Defendants' motion. Afrons v. E.I. DuPont de Nemours & Co., 261 F.2d 434, 435 (2d Cir. 1958).

### III. Successor Liability Has Been Adequately Pled

In general, under New York common law,[2] a business entity's acquisition of assets from another, as alleged here (Am. Compl. ¶¶22, 24), results in no successor liability, with four exceptions: (1) the successor corporation expressly or impliedly assumed the liabilities of its predecessor; (2) there was a consolidation or de facto merger of the two business entities; (3) the successor is a "mere continuation" of the predecessor; or (4) the transaction is entered into fraudulently to escape such obligations. Schumacher v. Richards Shear Co., 451 N.E.2d 195, 198

(N.Y. 1983). The general rule and the four acknowledged exceptions apply equally to tort and contract cases. Colon v. Multi-Pak Corp., 477 F. Supp. 2d 620, 626 (S.D.N.Y. 2007) (citing Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 45 (2d Cir. 2003)).

In their motion to dismiss, Defendants assert that Dauphitex has not sought application of the de facto merger exception (Defendants' Brief in Support of Their Motion to Dismiss the Amended Complaint's Second Claim (hereinafter referred to as "Defendants' Memo of Law") at 4). Although Dauphitex did not explicate a de facto merger theory in its Amended Complaint, it has asserted a more general claim of successor liability, of which a de facto merger claim is a subspecies (Am. Compl. ¶32). Under the liberal federal pleading standards, if the allegations in a complaint do not support the particular legal theory advanced, "a district court has broad latitude in determining whether another theory of relief with respect to those same allegations is available." Henneberry v. Sumitomo Corp. of Am., 415 F. Supp. 2d 423, 454 (S.D.N.Y. 2006) (citing Raine v. Lorimar Prods., Inc., 71 B.R. 450, 453 (S.D.N.Y. 1987)). See also 5 C. Wright & A. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004). Therefore, the Court will consider whether the de facto merger exception applies to Plaintiff's allegations.

---

[2] The parties do not dispute that New York law governs in this case.

Defendants further contend that a cause of action for successor liability has not been adequately pled under either the de facto merger exception or the mere continuation exception. Courts have acknowledged a lack of clarity between the mere continuation and de-facto merger exceptions. In Cargo Partner, 352 F.3d at 45, the Second Circuit noted that "[s]ome courts have observed the mere-continuation and de-facto-merger doctrines are so similar that they may be considered a single exception." See also id. at 45 n.3 (collecting cases); Peralta v. WMH Tool Group, Inc., No. 04 Civ. 3826, 2005 U.S. Dist. LEXIS 41755, at *10 (E.D.N.Y. Aug. 18, 2005); Miller v. Forge Mench Partnership Ltd., No. 00 Civ. 4314, 2005 WL 267551, at *6-7, n.3 (S.D.N.Y. Feb. 2, 2005) (treating the two exceptions as "a single basis for imposing successor liability"); Lumbard v. Maglia, 621 F.Supp. 1529, 1534 (S.D.N.Y. 1985) (noting that "[t]he two theories . . . tend to overlap" and considering them collectively as the "de facto merger theory"). But see Ladjevardian v. Laidlaw-Coggeshall, Inc., 431 F.Supp. 834, 839 (S.D.N.Y. 1977) (differentiating between de facto merger and continuation, in that a continuation "accomplishes . . . something in the nature of a corporate reorganization, rather than a mere sale"). In the case at bar, the Court need not resolve whether the de facto merger and mere continuation exceptions are the same or distinct theories, as the Plaintiffs have adequately pled successor liability under either theory to survive a motion to

dismiss.

### *i. De Facto Merger Has Been Adequately Alleged*

A de facto merger occurs when one corporation is absorbed by another absent compliance with the statutory requirements for a merger. Arnold Graphics Indus., Inc. v. Indep. Agent Ctr., Inc., 775 F.2d 38, 42 (2d Cir. 1985). The hallmarks of a de facto merger include: (1) continuity of ownership; (2) a cessation of ordinary business and dissolution of the acquired corporation as soon as possible; (3) assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation; and (4) a continuity of management, personnel, physical location, assets, and general business operation. Cargo Partner, 352 F.3d at 46 (citing Fitzgerald v. Fahnestock & Co., 730 N.Y.S.2d 70, 71 (App. Div. 1st Dep't 2001). While the Second Circuit has yet to resolve the question of whether all four factors must be present prior to a finding of de facto merger, see State of New York v. Nat'l Serv. Indus., Inc., 380 F. Supp. 2d 122, 130 (2005) (citing Cargo Partner, 352 F.3d at 46 ("We have no need to . . . determine whether all four factors must be present for there to be a de facto merger.")), there is significant support in the case law for the notion that "not all these elements are necessary to find a de

9

facto merger." Fitzgerald, 730 N.Y.S.2d at 71; Marenyi v. Packard Press Corp., 1994 U.S. Dist. Lexis 13923, at *5 n.3 (S.D.N.Y Sept. 29, 1994).

For example, in Lumbard, 621 F.Supp. 1529, the court denied the defendants' Rule 12(b)(6) motion to dismiss the plaintiff's cause of action for successor liability even though the amended complaint did not "thoroughly describe *every* indicator of a de facto merger." Id. at 1536 (emphasis added). The court found that the amended complaint's description of the "wholesale transformation of one company . . . into another," including assertions that, as in this case, the employees, assets and management remained the same, constituted allegations sufficient to state a de facto merger claim when viewed in a light most favorable to the plaintiffs. Id.

The Defendants concede that the Plaintiffs have alleged facts in support of two of the four indicia of de factor merger, namely continuity of ownership and continuity of management, location, assets, and operations (Defendants' Memo of Law at 5). In Cargo Partner, the Second Circuit emphasized the centrality of continuity of ownership in a de facto merger analysis, stating that "New York does not make a corporation that purchases assets liable for the seller's contract debts absent continuity of ownership."

10

Cargo Partner, 352 F.3d at 46. In fact, the court noted that while "[c]ontinuity of ownership might not alone establish a de facto merger . . . it *is* the substance of a merger." Id. at 47 (internal quotation marks omitted). In Cargo Partner, the Second Circuit affirmed the district court's Rule 12(b)(6) dismissal of a complaint based upon the plaintiff's inability to establish continuity of ownership. Id. Here, it is conceded that Dauphitex has sufficiently pled continuity of ownership to survive a 12(b)(6) motion.

Defendants have contended that dissolution of the predecessor corporation is a prerequisite for an adequately pled claim for successor liability under the de facto merger doctrine (Defendants' Memo of Law p. 5). However, the Appellate Division of the New York Supreme Court has held that "so long as the acquired corporation is shorn of its assets and has become, in essence, a shell, legal dissolution is not necessary before a finding of de facto merger will be made." Fitzgerald, 730 N.Y.S.2d at 72. Here, SCH had no income during the 2006 calendar year and has transferred its assets and goodwill to SCH Enterprises (Am. Compl. ¶¶22, 24). Based on these allegations in the Amended Complaint, SCH appears to have, in essence, become a shell.

The cases cited by Defendants in support of their

11

argument that a de facto merger has not been adequately alleged absent evidence of SCH's dissolution are distinguishable, on the facts, from the instant case. Most importantly, in the cases upon which Defendants rely, the plaintiffs did not establish continuity of ownership. See, e.g., Linens of Europe, Inc. v. Best Mfg., Inc., 2004 U.S. Dist. Lexis 18575 (S.D.N.Y. Sept. 15, 2004); Peralta, 2005 U.S. Dist. LEXIS 41755, at *11; Kingdom 5-KR-41, Ltd. v. Star Cruises, PLC, No. 01 Civ. 2946, 2003 U.S. Dist. Lexis 1766, at *9 (S.D.N.Y. Feb. 6, 2003); Washington Mut. Bank v. SIB Mortgage Corp., 791 N.Y.S.2d 874 (Sup. Ct. Kings Co. 2004), aff'd, 801 N.Y.S.2d 821, 822 (App. Div. 2d Dep't 2005). In the case at bar, Defendants have conceded, and the Court agrees, that Dauphitex has alleged facts supporting continuity of ownership, as well as continuity of management, personnel, physical location, assets, and general business operation. (Am. Compl. ¶¶ 22-30; Defendants' Memo of Law at 5).

The de facto merger analysis requires taking into consideration the totality of the relevant allegations. See Marenyi at *4 (stating that "the balancing process [of the de facto merger analysis] is by its nature undefined" and noting that the Magistrate Judge had "appropriately weighed the present and absent factors" and made his decision based on "the totality of the circumstances"). Here, the fact that the predecessor corporation

has not been formally dissolved "is not sufficient to outweigh the other factors that adequately show a de facto merger." McDarren v. Marvel Entm't Group, Inc., No. 94 Civ. 0910, 1995 WL 214482, at *22-23 (S.D.N.Y. Apr. 7, 1995).

Furthermore, as the Court noted in Cargo Partner, "[t]he purpose of the doctrine of de facto merger is to 'avoid [the] patent injustice which might befall a party simply because a merger has been called something else.'" Cargo Partner, 352 F.3d at 46 (citations omitted). Therefore, "courts are to analyze the facts in a flexible manner that disregards mere questions of form and asks whether, in substance, it was the intent of [the successor] to absorb and continue the operation of [the predecessor]." Miller, 2005 WL 267551, at *7 (internal quotations and citations omitted). Courts may impose successor liability in cases "where the form of the transaction d[oes] not accurately portray its substance." Id.

Therefore, given the totality of the allegations contained in the Amended Complaint, the Plaintiff's assertions in support of successor liability based on de facto merger are adequate to withstand a 12(b)(6) motion to dismiss.

### ii. *Mere Continuation Has Been Adequately Alleged*

The mere continuation exception applies where "it is not simply the business of the original corporation which continues, but the corporate entity itself." Ladjevardian, 431 F. Supp. at 839 (citation omitted). "A continuation envisions a common identity of directors [and] stockholders and the existence of only one corporation at the completion of the transfer." Id. The Amended Complaint has alleged how SCH, its children's clothing business, assets, goodwill, employees, offices, telephone number, address, management, and ownership continue in the form of Enterprises. However, Defendants contend that the continued existence of SCH, in however meager a form, is fatal to Dauphitex's allegations that Enterprises is a "mere continuation" of SCH.

In Kidz Cloz, Inc. v. Officially For Kids, Inc., No. 00 Civ. 6270 (DC), 2002 WL 1586877, (S.D.N.Y. July 17, 2002), the defendants moved to dismiss the plaintiff's claims of successor liability based in part on the plaintiff's acknowledgment that the predecessor entity retained an asset in its transaction with the alleged successor entity. The defendants argued that having retained an asset, the predecessor continued to exist after the sale and, therefore, the plaintiffs could not avail themselves of the mere continuation exception. Id. at *5. The court denied the

14

defendants' Rule 12(b)(6) motion to dismiss, explaining that the plaintiff's acknowledgment concerning the retained asset needed to be placed in the context of allegations contained in thirteen paragraphs of the second amended complaint which "clearly allege[d]" that the defendants were a mere continuation of their predecessor and were liable as successors for all obligations due to the plaintiff. Id. Despite the fact that the successor survived the asset purchase, the court concluded that "it hardly appear[ed] beyond doubt that plaintiffs [could] prove no set of facts that would entitle them to relief." Id. Cf. O'Connor v. 11 W. 30th St. Rest. Corp., Nos. 94 Civ. 2951, 93 Civ. 8895, 1995 WL 354904, at *8 (S.D.N.Y. June 13, 1995) (holding that maintenance of the same premises, phone numbers and equipment is sufficient to plead a mere continuation claim of successor liability). Under the rationale set forth in Kidz Cloz, Dauphitex has sufficiently pled a cause of action for successor liability under the mere continuation exception.

Defendants cite Schumacher v. Richards Shear Co., Inc., 59 N.Y.2d 239, 245, 464 N.Y.S.2d 437, 440 (1983), in which the New York Court of Appeals held that a predecessor corporation must be extinguished in order to satisfy the mere continuation exception. However, Schumacher is not dispositive in the case at bar. Here, the Amended Complaint has alleged that SCH transferred to

15

Enterprises its assets, business location, address, employees, good will and management, allegations which did not exist in Schumacher. Similarly, in McDarren, 1995 WL 214482, at *9, the court specifically distinguished Schumacher in holding that the mere continuation exception is satisfied when the predecessor transferred not only assets but also business location, employees, management and good will to the successor, even when predecessor continues to exist as a shell corporation.

Defendants also cite Diaz v. South Bend Lathe, Inc., 707 F.Supp. 97 (E.D.N.Y. 1989), Sweatland v. Park Corp., 587 N.Y.S.2d 54 (App. Div. 4th Dep't 1992), and Gerhart v. Borg-Warner Corp., 788 N.Y.S.2d 579 (Sup. Ct. Ontario Co. 2005), in support of their contention that if a predecessor corporation continues to exist after a sale, the mere continuation exception is not applicable. However, the Diaz, Sweatland, and Gerhart courts did not establish continuity of ownership. Here, the Court has expressly found continuity of ownership, as discussed supra.

Finally, Defendants cite Marenyi, 1994 U.S. Dist. LEXIS 13923, and Colon, 2007 U.S. Dist. LEXIS 19748, both of which can be distinguished from the case at bar. In Marenyi, the predecessor company "continued to conduct some business" after the sale, maintaining an office with a small staff that continued to keep the

16

books, prepare tax returns, and deal with creditors and unresolved litigation. The predecessor company also continued to receive a percentage of the accounts receivable which were collected after the sale of assets. Marenyi, 1994 U.S. Dist. LEXIS 13923, at *6.

In Colon, this Court dismissed a claim of successor liability on the basis that the plaintiff had not produced evidence that the defendant was a mere continuation of the predecessor corporation, as the predecessor corporation continued to exist for nearly five years after the execution of an asset purchase agreement *and*, unlike in the case at bar, plaintiff did not produce evidence indicating continuity of ownership. Colon, 2007 U.S. Dist. LEXIS 19748, at *15.

The mere continuation exception is "designed to prevent a situation whereby the specific purpose of acquiring assets is to place those assets out of reach of the predecessor's creditors. . . . Thus, the underlying theory of the exception is that[] if [a] corporation goes through a mere change in form without a significant change in substance, it should not be allowed to escape liability." 15 W. Fletcher, Cyclopedia of the Law of Private Corporations § 7124.10 (perm ed., rev. vol. 1999). See also Monroe v. Interlock Steel Co., Inc., 487 N.Y.S.2d 1013, 1014-15 (Sup. Ct. Warren Co. 1985) ("The exceptions are a response to iniquities

17

which could occur if the doctrine that corporations are separate and distinct entities is blindly accepted. If a corporation could escape liability by using corporate reorganization to make cosmetic changes in essentially the same business, potential plaintiffs would be without remedy.").

On the allegations contained in the complaint that Enterprises was formed on November 18, 2003, two weeks after SCH commenced its action against Dauphitex in the Commercial Court of Paris, and that there is continuity of ownership as well as shared office space, address, employees and management, it is logical to infer that Enterprises was created to avoid contractual liability and a monetary judgment in the event that Dauphitex prevailed in the Commercial Court of Paris breach of contract action. Therefore, given the totality of the allegations contained in the amended complaint, and in light of the purpose of the mere continuation exception, this Court finds that mere continuation has been sufficiently pled to survive a motion to dismiss.

## IV. Conclusion

For all the foregoing reasons, the motion of Defendants to dismiss is denied.

So ordered.

New York, NY
November / , 2007

_____
ROBERT W. SWEET
U.S.D.J.